# EXHIBIT A

2:19-cv-01639-RMG   Date Filed 02/01/19   Entry Number 1-1   Page 2 of 49

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------------------------------x

TOWN OF EAST HAMPTON,

                         Plaintiff,

                 -against-

3M COMPANY (f/k/a MINNESOTA MINING AND
MANUFACTURING CO.), TYCO FIRE PRODUCTS L.P.
Successor-In-Interest to the ANSUL COMPANY, BUCKEYE
FIRE EQUIPMENT COMPANY, CHEMGUARD, INC.,
UNITED TECHNOLOGIES CORPORATION, KIDDE PLC
INC., KIDDE FIRE FIGHTING, INC., ANGUS
INTERNATIONAL SAFETY GROUP, LTD., ANGUS FIRE
ARMOUR CORPORATION, NATIONAL FOAM INC., E.I.
DU PONT DE NEMOURS AND COMPANY, THE
CHEMOURS COMPANY, DOWDUPONT INC.,
INCORPORATED VILLAGE OF EAST HAMPTON d/b/a
EAST HAMPTON FIRE DEPARTMENT,
BRIDGEHAMPTON VOLUNTEER FIRE DISTRICT a/k/a
BRIDGEHAMPTON VOLUNTEER FIRE DEPARTMENT
a/k/a BRIDGEHAMPTON FIRE DISTRICT, WAINSCOTT
HAMLET CENTER LLC, WAINSCOTT INDUSTRIAL
LLC, WAINSCOTT COMMERCIAL CENTER LLC,
HEDGES ROW LLC, JOHN DOE "1" THROUGH "100",
JANE DOE "1" THROUGH "100", JOHN DOE
CORPORATIONS "1" THROUGH "100", and OTHER
JOHN DOE ENTITIES "1" THROUGH "100",

                        Defendants.

-------------------------------------------------------------------------x

Index No.

**SUMMONS**

Plaintiff designates Suffolk
County as the Place for Trial.

The Basis of Venue is
Plaintiff's Place of Business:
*159 Pantigo Road*
*East Hampton, New York*

Date Index Number Purchased:
December 28, 2018

TO THE ABOVE NAMED DEFENDANTS:

      You are hereby summoned and required to serve upon the Plaintiff's attorneys an answer

to the complaint in this action within twenty (20) days after the service of this summons, exclusive

of the day of service, or within thirty (30) days after service is complete if this summons is not

personally delivered to you within the State of New York. In case of your failure to answer,

1

judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  December 28, 2018
        Melville, New York

                              RIGANO LLC
                              *Attorneys for Town of East Hampton*

                              By: *s/ James P. Rigano*
                                  James P. Rigano, Esq.
                                  Nicholas C. Rigano, Esq.
                                  Alyse Delle Fave, Esq.
                                  538 Broad Hollow Road, Suite 217
                                  Melville, New York 11747
                                  (631) 756-5900

To:

3M Company (f/k/a Minnesota Mining And Manufacturing Co.)
3M Center
St. Paul, Minnesota 55144

Tyco Fire Products L.P. Successor-In-Interest to the Ansul Company
1400 Pennbrook Parkway
Lansdale, Pennsylvania 19446

Buckeye Fire Equipment Company
110 Kings Road
Kings Mountain, North Carolina 28086

Chemguard, Inc.
One Stanton Street
Marinette, WI 54143

United Technologies Corporation
10 Farm Springs Road
Farmington, Connecticut 06032

Kidde PLC Inc.
One Carrier Place
Farmington, Connecticut 06034

Kidde Fire Fighting, Inc.
400 Main Street
Ashland, Massachusetts 01721

2:19-cv-01639-RMG    Date Filed 02/01/19    Entry Number 1-1    Page 4 of 49

Angus International Safety Group, Ltd.
Station Road,
High Bentham,
Nr Lancaster
LA2 7NA
United Kingdom

Angus Fire Armour Corporation
141 Junny Road,
Angier, North Carolina 27501

National Foam Inc.
141 Junny Road,
Angier, North Carolina 27501

E.I. du Pont de Nemours and Company
974 Centre Road
Wilmington, Delaware 19805

The Chemours Company
1007 Market Street
Wilmington, Delaware 19899

DowDuPont Inc.
974 Centre Road
Wilmington, Delaware 19805

Incorporated Village of East Hampton d/b/a East Hampton Fire Department
86 Main Street
East Hampton, New York 11937

Incorporated Village of East Hampton d/b/a East Hampton Fire Department
One Cedar Street
East Hampton, New York 11937

Bridgehampton Volunteer Fire District a/k/a Bridgehampton Volunteer Fire Department a/k/a Bridgehampton Fire District
64 School Street
Bridgehampton, New York 11932

Wainscott Hamlet Center LLC
c/o Maclachlan & Eagan LLP
241 Pantigo Road
East Hampton, New York 11937

3

2:19-cv-01639-RMG     Date Filed 02/01/19     Entry Number 1-1     Page 5 of 49

Wainscott Industrial LLC
c/o Maclachlan & Eagan LLP
241 Pantigo Road
East Hampton, New York 11937

Wainscott Commercial Center LLC
PO Box 196
Bridgehampton, New York 11932

Hedges Row LLC
PO Box 840
East Quogue, New York 11942

**Rigano LLC**
538 Broad Hollow Road, Suite 217
Melville, New York 11747
(631) 756-5900
James P. Rigano, Esq.
Nicholas C. Rigano, Esq.
Alyse M. Delle Fave, Esq.

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------------------------------x

TOWN OF EAST HAMPTON,

|  |  |
|---|---|
| Plaintiff, | Index No. |
| -against- | **COMPLAINT** |
| 3M COMPANY (f/k/a MINNESOTA MINING AND MANUFACTURING CO.), TYCO FIRE PRODUCTS L.P. Successor-In-Interest to the ANSUL COMPANY, BUCKEYE FIRE EQUIPMENT COMPANY, CHEMGUARD, INC., UNITED TECHNOLOGIES CORPORATION, KIDDE PLC INC., KIDDE FIRE FIGHTING, INC., ANGUS INTERNATIONAL SAFETY GROUP, LTD., ANGUS FIRE ARMOUR CORPORATION, NATIONAL FOAM INC., E.I. DU PONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY, DOWDUPONT INC., INCORPORATED VILLAGE OF EAST HAMPTON d/b/a EAST HAMPTON FIRE DEPARTMENT, BRIDGEHAMPTON VOLUNTEER FIRE DISTRICT a/k/a BRIDGEHAMPTON VOLUNTEER FIRE DEPARTMENT a/k/a BRIDGEHAMPTON FIRE DISTRICT, WAINSCOTT HAMLET CENTER LLC, WAINSCOTT INDUSTRIAL LLC, WAINSCOTT COMMERCIAL CENTER LLC, HEDGES ROW LLC, JOHN DOE "1" THROUGH "100", JANE DOE "1" THROUGH "100", JOHN DOE CORPORATIONS "1" THROUGH "100", and OTHER JOHN DOE ENTITIES "1" THROUGH "100", | **_Jury Trial Demanded_**<br><br>Plaintiff designates Suffolk County as the Place for Trial.<br><br>The Basis of Venue is Plaintiff's Place of Business:<br>_159 Pantigo Road_<br>_East Hampton, New York_ |
| Defendants. | |

-------------------------------------------------------------------------x

Plaintiff Town of East Hampton ("Plaintiff" or "Town") by and through its attorneys,

Rigano LLC, as and for its complaint against Defendants 3M Company (f/k/a Minnesota Mining

And Manufacturing Co.) ("3M"), Tyco Fire Products L.P. Successor-In-Interest to the Ansul

Company ("Tyco"), Buckeye Fire Equipment Company ("Buckeye"), Chemguard, Inc.

1

("Chemguard"), United Technologies Corporation ("United Technologies"), Kidde PLC Inc. ("Kidde"), Kidde Fire Fighting, Inc. ("KFF"), Angus International Safety Group, Ltd. ("Angus International"), Angus Fire Armour Corporation ("Angus Fire"), National Foam Inc. ("National Foam" and together with 3M, Tyco, Buckeye, Chemguard, United Technologies, Kidde, KFF, Angus International, Angus Fire, the "AFFF Manufacturing Defendants"), E.I. du Pont de Nemours and Company ("DuPont"), The Chemours Company ("Chemours"), DowDuPont Inc., ("DowDuPont" and together with DuPont and Chemours, the "Product Manufacturing Defendants" and Product Manufacturing Defendants collectively with the AFFF Manufacturing Defendants, the "Manufacturing Defendants"), Incorporated Village of East Hampton d/b/a East Hampton Fire Department ("Village"), Bridgehampton Volunteer Fire District a/k/a Bridgehampton Volunteer Fire Department a/k/a Bridgehampton Fire District ("BVFD"), Wainscott Hamlet Center LLC ("WHC"), Wainscott Industrial LLC ("WI"), Wainscott Commercial Center LLC ("WCC"), Hedges Row LLC ("HR" and together with WHC, WI and WCC, the "Sand Pit Owners" and Sand Pit Owners collectively with Village and BVFD, the "Local Defendants") as well as John Doe "1" through "100", Jane Doe "1" through "100", John Doe Corporations "1" through "100" and Other John Doe Entities "1" through "100" (together, the "Unnamed Defendants" and collectively with the Manufacturing Defendants and the Local Defendants, the "Defendants"), alleges as follows:

## Nature of the Action

1.    Plaintiff brings this action against Defendants for, among other things: (I) recovery of the Plaintiff's costs in connection with: (i) supplying bottled water to the Town's residents who have detected perfluorinated compounds in their private drinking water wells as a result of Defendants' actions or omissions, (ii) connecting the homes of impacted residents to the public

2

drinking water supply to enable the supply of clean and safe drinking water, (iii) investigating, treating, and remediating the environmental media on Plaintiff's properties and within Town borders to eliminate contamination caused and/or created by Defendants' actions or omissions, (iv) protecting the public health, safety, welfare, and the environment; (II) injunctive relief requiring Defendants to remediate the contamination they caused throughout the Town; and (III) contribution and indemnification with respect to liability assessed against Plaintiff, if any, in the class action styled *Shipman v. 3M Company et al.*, 18-cv-02496-ADS-AKT (EDNY) (the "Class Action").[1]

### Jurisdiction and Venue

2.      Subject matter jurisdiction is proper in this Court pursuant to New York State Constitution Article VI, § 7.

3.      The notice of claim requirements set forth in New York General Municipal Law § 50-E are inapplicable to this action as this action has been brought to vindicate a public interest and protect the Wainscott public's right to clean drinking water and natural resources.

4.      Personal jurisdiction exists over each defendant pursuant to New York Civil Practice Law and Rules §§ 301, 302, 1501, New York Business Corporation Law § 1314 and other applicable law.

5.      Venue is proper in this Court because the actions/omissions of Defendants giving rise to the claims asserted herein occurred in Suffolk County, have caused harm to Plaintiff, which is a municipality located within Suffolk County, one or more of the Local Defendants reside in Suffolk County, and all damages complained of herein occurred in Suffolk County.

---

[1]      The Class Action is subject to an outstanding motion to remand to state court and is the subject of a transfer order issued by the Judicial Panel for Multi-District Litigation whereby the Class Action was transferred to the United States District Court for the District of South Carolina.

3

## Parties

6.      Plaintiff Town of East Hampton is a municipality located in southeastern Suffolk County, New York. The Town's population consists of approximately 21,000 people.  The Hamlet of Wainscott ("Wainscott") is a neighborhood within the Town and subject to the Town's jurisdiction.

7.      Plaintiff owns the land located at the East Hampton Airport (the "Airport"), various real properties on Industrial Road in Wainscott, New York, which is just south of the Airport, and other real properties throughout the Town.

8.      Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Co.) is a Delaware corporation registered and authorized to do business in New York, with principal offices at 3M Center, St. Paul, Minnesota 55144.

9.      Defendant Tyco Fire Products L.P., is a Delaware limited partnership registered and authorized to do business in New York, with principal offices at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Upon information and belief, Tyco is the successor-in-interest to Ansul, Inc.

10.     Defendant Buckeye Fire Equipment Company is an Ohio corporation, with principal offices at 110 Kings Road, Kings Mountain, North Carolina 28086.

11.     Defendant Chemguard, Inc. is a Texas corporation, with principal offices at 204 South 6th Avenue Mansfield, Texas 76063 and/or One Stanton Street Marinette, WI 54143.

12.     Defendant United Technologies Corporation is a Delaware corporation registered and authorized to do business in New York, with principal offices located at 10 Farm Springs Road, Farmington, Connecticut 06032.

13.     Defendant Kidde PLC Inc. is a Delaware corporation registered and authorized to

do business in New York, with principal offices located at One Carrier Place, Farmington, Connecticut 06034.

14.     Defendant Kidde Fire Fighting, Inc. is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, Massachusetts 01721. Upon information and belief, Kidde Fire Fighting was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

15.     Defendant Angus International Safety Group, Ltd. is a foreign private limited company, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA. Upon information and belief, Angus International is registered in England with a registered number of 8441763.

16.     Defendant Angus Fire Armour Corporation is a Delaware corporation, with principal offices at 141 Junny Road, Angier, North Carolina 27501.

17.     Defendant National Foam, Inc. is a Delaware corporation, with principal offices at 141 Junny Road, Angier, North Carolina 27501.

18.     Upon information and belief, Angus International is the corporate parent of National Foam and Angus Fire.

19.     Each of the AFFF Manufacturing Defendants developed, manufactured, distributed, supplied, marketed and/or sold aqueous film-forming foam ("AFFF") in New York and resulted in AFFF containing perfluorooctanoic acid ("PFOA") and/or perfluorooctanesulfonic acid ("PFOS") being stored and used in Wainscott, including at the Airport (defined below), the Fire Training Facility (defined below) and the Sand Pit (defined below) that contributed to the contamination of environmental media discussed herein.

20.     Defendant E.I. du Pont de Nemours and Company is a Delaware corporation with a principal place of business at 974 Centre Road, Wilmington, Delaware 19805 and is authorized

5

and registered to do business in New York.

21.     Upon information and belief, DuPont developed, manufactured, distributed and marketed products containing PFOA and/or PFOS, including Teflon, that are the subject of this Complaint.

22.     Those products were used by businesses and residents in Wainscott in accordance with their intended or foreseeable uses which ultimately caused the contamination of environmental media and damages discussed herein.

23.     Defendant The Chemours Company is a Delaware corporation with a principal place of business of 1007 Market Street, Wilmington, Delaware 19899 and is authorized to do business in New York.

24.     Upon information and belief, Chemours is the resulting entity of a spin-off by DuPont, whereby DuPont saddled Chemours with its liability associated with PFOA and PFOS contamination.

25.     Upon information and belief, Chemours developed, manufactured, distributed and marketed products containing PFOA and/or PFOS, including Teflon or otherwise inherited liability associated with DuPont's actions associated therewith, that are the subject of this Complaint.

26.     Those products were used by businesses and residents in Wainscott in accordance with their intended or foreseeable uses which ultimately caused the contamination of environmental media and damages discussed herein.

27.     Defendant DowDuPont Inc. is a Delaware corporation with a principal places of business of 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, MI 48674 and does business throughout New York.

28.     Defendant DowDuPont Inc. is the resulting parent entity from the merger of Dow

6

Chemical Company and DuPont that became effective as of August 31, 2017.

29.     Defendant DowDuPont Inc. is the parent of DuPont and, upon information and belief, is liable for the damages set forth herein.

30.     Defendant Incorporated Village of East Hampton is a municipality in Suffolk County, New York located in the Town of East Hampton and is a separate, smaller jurisdiction from the Town.  The Village's population is over 1,000 people.

31.     Defendant Village owns, operates and directs the East Hampton Fire Department ("EHFD") which used AFFF throughout the Town contributing to the contamination at issue.

32.     Upon information and belief, EHFD has extinguished actual fire throughout the Town by use of AFFF, including at the Airport.

33.     EHFD has engaged in training exercises at: (i) the East Hampton Fire Districts Training Facility k/n/a Lawrence Franzone Fire Training Facility located at or around 65 Industrial Road, East Hampton, New York (the "Fire Training Facility"), and (ii) in the sand pit located immediately south of Industrial Road and between Wainscott NW Road and Hedges Lane (the "Sand Pit").

34.     During such training exercises, EHFD used AFFF.

35.     Bridgehampton Volunteer Fire District a/k/a Bridgehampton Volunteer Fire Department a/k/a Bridgehampton Fire District is a not-for-profit New York corporation located in Bridgehampton, New York.

36.     BVFD was established and exists for the purpose of providing services such as fire protection in, among other places, the Town.

37.     Upon information and belief, BVFD has used AFFF throughout the Town, including at the Airport, contributing to the contamination at issue.

38.     Upon information and belief, BVFP has extinguished actual fire throughout the

7

Town by use of AFFF.

39.     BVFD has engaged in training exercises at the Fire Training Facility and the Sand Pit.

40.     During such training exercises, BVFD used AFFF.

41.     Defendant Wainscott Hamlet Center LLC is a New York limited liability company with a principal place of business in Wainscott, New York.

42.     Defendant Wainscott Hamlet Center LLC owns part or all of the Sand Pit.

43.     Upon information and belief, Defendant Wainscott Hamlet Center LLC authorized firefighting training to be conducted on its property where AFFF was used.

44.     Upon information and belief, Defendant Wainscott Hamlet Center LLC authorized AFFF to be used on its property.

45.     Defendant Wainscott Industrial LLC is a New York limited liability company with a principal place of business in Wainscott, New York.

46.     Defendant Wainscott Industrial LLC owns part or all of the Sand Pit.

47.     Upon information and belief, Defendant Wainscott Industrial LLC authorized firefighting training to be conducted on its property where AFFF was used.

48.     Upon information and belief, Defendant Wainscott Industrial LLC authorized AFFF to be used on its property.

49.     Defendant Wainscott Commercial Center LLC is a New York limited liability company with a principal place of business in Wainscott, New York.

50.     Defendant Wainscott Commercial Center LLC owns part or all of the Sand Pit.

51.     Upon information and belief, Defendant Wainscott Commercial Center LLC authorized firefighting training to be conducted on its property where AFFF was used.

52.     Upon information and belief, Defendant Wainscott Commercial Center LLC

8

authorized AFFF to be used on its property.

53.     Defendant Hedges Row LLC is a New York limited liability company with a principal place of business in Wainscott, New York.

54.     Defendant Hedges Row LLC owns part or all of the Sand Pit.

55.     Upon information and belief, Defendant Hedges Row LLC authorized firefighting training to be conducted on its property where AFFF was used.

56.     Upon information and belief, Defendant Hedges Row LLC authorized AFFF to be used on its property.

57.     The Unnamed Defendants are those unknown individuals or entities who designed, developed, manufactured, distributed, marketed, supplied, sold, used and/or allowed the use of AFFF or caused AFFF to be used, throughout the Town contributing to and/or causing the contamination at issue.

## **Factual Background**

### I.     **PFAS Substances**

58.     Per- and polyfluoroalkyl substances ("PFAS") are a family of hundreds of man-made chemicals comprised of primarily carbon and fluorine.

59.     PFAS chemicals were invented in the 1930's.

60.     PFAS chemicals are effective in products requiring fire extinguishment and repellency of water, oil, and stains.

61.     PFOA and PFOS are the two most widely studied PFAS chemicals.

### II.     **Biopersistent, Bioaccumulative and Toxic Effects of PFOA and PFOS**

62.     PFOA and PFOS are man-made chemicals that do not exist naturally.

63.     PFOA and PFOS are biopersistent.

9

2:19-cv-01639-RMG     Date Filed 02/01/19     Entry Number 1-1     Page 15 of 49

64.     PFOA and PFOS can persist in the environment for decades.

65.     PFOA and PFOS do not easily degrade.

66.     PFOA and PFOS readily move through soil, sand and water.

67.     PFOA and PFOS are highly soluble in water.

68.     PFOA and PFOS bioaccumulate in humans, animals, and fish.

69.     PFOA and PFOS biomagnify in humans, animals, and fish.

70.     PFOA and PFOS can accumulate through the food chain.

71.     PFOA and PFOS may accumulate in humans in the serum, kidney and liver.

72.     PFOA and PFOS have a lengthy half-life within the human body.

73.     PFOA and PFOS have been found to cross the placenta wall from pregnant mother to fetus.

74.     PFOA and PFOS can be transferred from mother to infant via breastmilk.

75.     The United States Environmental Protection Agency ("EPA") has found that PFOA and PFOS may cause harm to developing fetuses and breastfed infants via transmission from the mother.

76.     PFOA and PFOS are toxic at very low levels.

77.     Human exposure to PFOA and PFOS has been linked to several diseases including testicular cancer, kidney cancer, thyroid disease, ulcerative colitis, hypertension and other conditions.

78.     The full health risk and impacts of exposure to PFOA and PFOS are still being studied.

79.     Injuries associated with PFOA and PFOS are typically latent and may manifest years or decades after exposure.

80.     Studies have shown that approximately 99% of Americans have detectable levels

10

of PFOA and/or PFOS in their blood.

81.     Studies have shown that virtually every baby born in America is born with a detectible level of PFOA and/or PFOS in his/her blood.

82.     There is no background or naturally occurring level of PFOA and/or PFOS as the chemicals are not natural and are man-made.

83.     No human had PFAS in their blood prior to the chemicals being invented.

84.     PFAS substances, and particularly PFOA and PFOS, have been detected ubiquitously throughout the world including as far as the Arctic.

85.     Due to the foregoing, the manufacture, import and use of PFOA and PFOS is restricted in the United States.

86.     In 2009, the Stockholm Convention on Persistent Organic Pollutants restricted production and use of PFOS.

87.     In 2015, the Stockholm Convention on Persistent Organic Pollutants proposed subjecting PFOA to the same restrictions and, upon information and belief, the proposal is still under consideration.

88.     In 2016 or 2017, PFOA and PFOS were added to New York State's list of hazardous substances.

89.     In 2016, EPA established a drinking water health advisory of seventy (70) parts per trillion of combined PFOA/PFOS.

90.     Certain states have promulgated advisory exposure levels lower than seventy (70) parts per trillion.

91.     In September 2017, Governor Cuomo established a Drinking Water Quality Council tasked with, among other things, making recommendations to establish Maximum Contaminant Levels ("MCLs") in drinking water for PFOA and PFOS and other emerging

11

contaminants.

92.     A MCL is the maximum level of a contaminant allowed in public drinking water, which, once established, creates a legally enforceable standard that requires applicable water systems to monitor, report findings and keep the contaminant below the level set.

93.     Exceedances of MCLs must be reported to the public and require mitigation once promulgated and effective.

94.     MCLs serve as a safety guideline for private drinking water wells.

95.     In New York State, groundwater cleanup standards for a particular contaminant are generally set at the same level as an applicable MCL.

96.     On December 18, 2018, the Drinking Water Quality Council made MCL recommendations of ten (10) parts per trillion of PFOA and ten (10) parts per trillion of PFOS (together, the "Recommended MCLs").

97.     It is expected that New York State will adopt the Recommended MCLs as enforceable standards in 2019.

98.     If the Recommended MCLs are adopted as expected, they will be one of the lowest MCLs adopted in New York for any contaminant, evidencing the extraordinary toxicity of these compounds.

99.     In June 2018, the United States Department of Health and Human Services Agency for Toxic Substances and Disease Registry issued a draft report for public comment titled Toxicological Profile for Perfluoroalkyls (the "ATSDR Report").

100.    The ATSDR Report calculated minimal risk levels for, among other chemicals, PFOA and PFOS.

101.    The minimal risk level is "an estimate of the amount of a chemical a person can eat, drink, or breathe each day without a detectable risk to health."

12

102.   According to the Association of State Drinking Water Administrators, the minimal risk levels for PFOA and PFOS found in the ATSDR report equate to approximately eleven (11) parts per trillion for PFOA and seven (7) parts per trillion for PFOS, which are materially consistent with the Recommended MCLs

### III.   Environmental Impacts of PFOA/PFOS

103.   PFOA and PFOS contamination of environmental media (i.e. soil and groundwater) is prevalent throughout the country.

104.   Upon PFOA or PFOS coming into contact with soil, PFOA and PFOS migrate downward through the soil until they reach the groundwater.

105.   PFOA and PFOS readily dissolve into groundwater.

106.   With its natural movement, the groundwater flows and, if contaminated with PFOA and PFOS, the groundwater carries PFOA and PFOS spreading the contamination over a wide area.

107.   Groundwater contaminated with PFOA and PFOS is of particular concern where groundwater is used as drinking water.

108.   In 1978, EPA declared Suffolk County as a sole source aquifer meaning: (i) "[t]here are no reasonably available alternative drinking water sources should the aquifer become contaminated", and (ii) "if contaminated, [the aquifer] would create a significant hazard to public health."

109.   The residents of the Town, including residents of Wainscott, rely on the sole source aquifer for their drinking water.

110.   The sole source of drinking water for the residents of Suffolk County, including residents of the Town of East Hampton, is the groundwater.

111.   On Long Island, drinking water supply wells supply drinking water by pumping

13

groundwater from the aquifer.

112.    Where groundwater is contaminated, drinking water supply wells pump and supply

the contaminated groundwater as drinking water if such water is not treated.

### IV.    Manufacturers of PFOA/PFOS and Their Apparent Decades-Long Knowledge and Intentional Concealment of Dangers To Human Health and the Environment

113.    In the 1940's, 3M began manufacturing PFOA and PFOS.

114.    In or around the 1950's, 3M began large-scale commercial production of PFOA.

115.    From no later than the 1950's through 2002, 3M was the primary manufacturer of

PFOA in the United States.

116.    From no later than the 1950's through 2002, 3M was the sole manufacturer of

PFOS in the United States.

117.    Upon information and belief, 3M made millions, if not billions, of dollars in profit

from its production of PFOA and PFOS.

118.    Commencing in the 1950's, 3M began selling PFOA to DuPont to enable DuPont

to manufacture Teflon and other products.

119.    PFOA is a key ingredient in DuPont's Teflon products.

120.    In or around the 1950's, 3M invented Scotchgard, which serves to repel water,

stains and oil on fabric including clothing, carpets, and textiles.

121.    For decades, Scotchgard containing PFOA and/or PFOS, was widely used on

clothing, carpets, textiles and other products.

122.    For decades, PFOS and its precursors were the key ingredients in 3M's Scotchgard.

123.    Upon information and belief, 3M and Dupont made billions of dollars in profit off

of their Scotchgard and Teflon products that contained PFOA and/or PFOS.

124.    As discussed fully below, 3M was the initial and primary manufacturer of AFFF,

14

which for decades contained PFOA and/or PFOS.

125.    Upon information and belief, by the end of the 1980's, certain Manufacturing Defendants, including, but not limited to, 3M and DuPont, were aware that PFAS materials, including PFOA and PFOS, had been detected in the blood of the general population of the United States, including people not known to be working at or living near facilities that manufacture PFAS suggesting that exposure resulted from use of products.

126.    By the end of the 1980's, certain Manufacturing Defendants, including but not limited to 3M and Dupont, conducted animal toxicity testing that indicated that exposure to PFOA and/or PFOS resulted in various adverse health effects among multiple species of animals.

127.    Upon information and belief, those studies showed that exposure to PFOA and/or PFOS may cause a variety of cancers, birth defects and/or other illness.

128.    Upon information and belief, by the end of the 1980's, DuPont classified PFOA as a confirmed animal carcinogen and possible human carcinogen.

129.    By the end of the 1980's, certain, if not all, Manufacturing Defendants, including but not limited to 3M and Dupont, were aware that PFOA and/or PFOS were biopersistent when allowed to enter the environment unmitigated.

130.    By the end of the 1980's, certain, if not all, Manufacturing Defendants, including but not limited to 3M and Dupont, were aware that PFOA and PFOS bind to human and animal tissue, persist in human and animal bodies for years, and, accumulate in humans and animals that continue to be exposed.

131.    By the end of the 1980's, certain, if not all, Manufacturing Defendants, including but not limited to 3M and Dupont, were aware that PFOA and/or PFOS were found throughout the world.

132.    Upon information and belief, by the end of the 1980's, certain Manufacturing

15

Defendants, including, but not limited to, 3M and DuPont, learned that PFOA and PFOS had the potential to pass the placenta wall, impact a fetus, and/or cause birth defects in humans and animals.

133.    Upon information and belief, by the end of the 1980's, female 3M employees of childbearing potential who were exposed to PFAS during their employ were moved to new roles in 3M as a result of these studies.

134.    After the 1980's, certain Manufacturing Defendants, including 3M and Dupont, conducted additional studies that confirmed the biopersistent, bioaccumulative, and toxic properties of PFOA and PFOS in humans and animals.

135.    Upon information and belief, studies conducted throughout the 1990s by certain Manufacturing Defendants, including 3M and Dupont, confirmed that exposure to PFOA and PFOS may cause various adverse human health impacts including an increased risk of cancer.

136.    Upon information and belief, in 1998, 3M, through an executive, told the EPA that 3M has no information suggesting that human health is at risk from exposure to PFOA and/or PFOS.

137.    Upon information and belief, from 1940 through at least 1998, the Manufacturing Defendants did not inform the appropriate governmental authorities, the public, or consumers of products containing PFOA and/or PFOS of the findings of the foregoing studies and other studies they completed.

138.    Upon information and belief, from 1940 through at least 1998, the Manufacturing Defendants did not inform or otherwise warn the appropriate governmental authorities, the public, or consumers of products containing PFOA and/or PFOS, that PFOA and/or PFOS may be a latent toxic substance.

139.    Upon information and belief, from 1940 through at least 1998, the Manufacturing

16

Defendants did not inform or otherwise warn the appropriate governmental authorities, the public, or consumers of products containing PFOA and/or PFOS, that PFOA and/or PFOS may be biopersistent.

140.    Upon information and belief, from 1940 through at least 1998, the Manufacturing Defendants did not inform or otherwise warn the appropriate governmental authorities, the public, or consumers of products containing PFOA and/or PFOS, that PFOA and/or PFOS may be bioaccumulative.

141.    In 2000, EPA issued an internal memorandum discussing the adverse impacts of PFOA and PFOS to human health and the environment citing that the chemicals are biopersistent, bioaccumulative in animals and humans, toxic, and may pose a long term risk to human health and the environment.

142.    In and/or shortly before 2000, EPA pressured 3M to phase out and/or cease producing PFOA and PFOS.

143.    In 2000, 3M, in response to pressure from EPA, finally announced that it would phase out production of PFOA and PFOS.

144.    Despite the foregoing, in 2000, 3M issued a press release asserting that PFOA and PFOS are safe.

145.    In 2002, 3M substantially completed the phase out production of PFOA and PFOS.

146.    Upon information and belief, in or shortly after 2002, 3M stopped producing AFFF and Scotchgard with PFOA and/or PFOS and used an alternative formula for these products.

147.    Despite 3M's substantial phase out of PFOA manufacturing, in 2002, DuPont opened a new manufacturing facility to take over manufacturing of PFOA because DuPont's Teflon product, and other products containing PFOA, were so profitable.

148.    Upon information and belief, DuPont elected to open this plant to continue the

17

production of PFOA despite having apparent knowledge of the foregoing information.

149.    DuPont, 3M and the other Manufacturing Defendants have been named defendants in hundreds, if not, thousands of personal injury and property damage lawsuits throughout the country for their egregious conduct.

**V.    Manufacturers of AFFF**

150.    Upon information and belief, Defendant 3M developed, designed, manufactured, marketed, sold and/or distributed AFFF containing PFAS, including PFOA and PFOS, beginning in the 1960's through approximately 2002.

151.    Upon information and belief, Defendant Tyco (and its predecessor Ansul) developed, designed, manufactured, marketed, sold and/or distributed AFFF containing PFAS, including PFOA and PFOS, beginning no later than 1976 to no earlier than 2009.

152.    Upon information and belief, Defendant National Foam developed, designed, manufactured, marketed, sold and/or distributed AFFF containing PFAS, including PFOA and PFOS, beginning no later than 1976 to no earlier than 2009.

153.    Upon information and belief, Defendant Angus Fire developed, designed, manufactured, marketed, sold and distributed AFFF containing PFAS, including PFOA and PFOS, from approximately 1993 through the present.

154.    Upon information and belief, KFF developed, designed, manufactured, marketed, sold, and distributed AFFF containing PFAS, including PFOA and PFOS, from approximately 1991 through the present.

155.    Upon information and belief, Defendant Chemguard developed, designed, manufactured, marketed, sold and/or distributed AFFF containing PFAS, including PFOA and PFOS, beginning no later than 1997 to no earlier than 2009.

156.    Upon information and belief, Kidde developed, designed, manufactured, marketed,

18

sold, and distributed AFFF containing PFAS, including PFOA and PFOS, from approximately 2000 through 2013.

157.    Upon information and belief, Defendant Buckeye developed, designed, manufactured, marketed, sold and/or distributed AFFF containing PFAS, including PFOA and PFOS, from approximately 2003 to no earlier than 2009.

158.    Upon information and belief, Defendant United Technologies developed, designed, manufactured, marketed, sold and/or distributed AFFF containing PFAS, including PFOA and PFOS, from approximately 2003 to no earlier than 2009.

159.    Upon information and belief, the AFFF Manufacturer Defendants knew, or should have known, that PFAS, including PFOA and PFOS, was contained in their AFFF products.

160.    Upon information and belief, the AFFF Manufacturer Defendants knew, or should have known, of the risks of PFOA and PFOS to human health and the environment when manufacturing, marketing, selling and distributing their products.

161.    Upon information and belief, the AFFF Manufacturer Defendants, despite having such knowledge, failed to timely inform the EPA, other applicable government agencies, or the public of the information they possessed related to risks to human health and the environment of AFFF containing PFOA and PFOS and continued to manufacture, market, sell and distribute AFFF with such knowledge.

162.    Upon information and belief, the AFFF Manufacturer Defendants, despite having such knowledge, failed to adequately warn users of AFFF of the potential hazards to human health and the environment during all relevant times.

163.    While AFFF Manufacturer Defendants have ceased production of AFFF containing PFOA and PFOS, AFFF produced by AFFF Manufacturer Defendants containing PFOA and PFOS remains stored and on the shelves and may continue to be used into the

19

foreseeable future.

164.   Upon information and belief, AFFF Manufacturer Defendants have not recalled their produced AFFF containing PFOA and PFOS that remains stored and/or on the shelves today.

165.   During all relevant times, reasonable and safer alternatives were available to produce AFFF, or an effective sister product, without PFOA or PFOS.

166.   AFFF, or its sister product, is produced today without PFOA or PFOS.

**VI.     PFOA/PFOS Contamination Discovered in the Hamlet of Wainscott**

167.   In Wainscott, groundwater flows in a southeasterly direction from the Airport, Fire Training Facility, the Sand Pit, numerous residences and towards Georgica Pond.

168.   Residents in the Village of Wainscott obtain their drinking water from the groundwater.

169.   Residents in the Village of Wainscott obtain their drinking water from groundwater supplied by private wells.

170.   In October 2017, it was first discovered that the private wells of several Wainscott residents were contaminated with PFOA and PFOS in excess of the EPA health advisory level of seventy (70) parts per trillion.

171.   Since October 2017, Suffolk County Department of Health Services has offered free testing of private wells to residents and property owners within Wainscott.

172.   The area of concern within Wainscott consists of no less than 300 residences.

173.   At this time, the geographic bounds of the area of concern is defined as follows: a northern boundary of the Airport, an eastern boundary of Daniels Hole Road and Georgica Pond, a southern boundary of the Atlantic Ocean and the western boundary by the area immediately west of Wainscott Harbor Road, Town Line Road and Wainscott Hollow Road.

174.   Over 230 private wells within the area of concern have been found to contain

PFOA and/or PFOS.

175.   Over seventy-five (75) private wells within the area of concern have been found to contain PFOA and/or PFOS at levels in excess of the Recommended MCLs.

176.   Over ten (10) wells within the area of concern have been found to contain PFOA and/or PFOS at levels in excess of the EPA's seventy (70) parts per trillion health advisory level.

177.   Additional wells have detected PFAS compounds, other than PFOA and PFOS, that appear to be toxic, but are not yet well studied.

178.   As the impacted private wells do not have treatment for PFOA or PFOS, Wainscott residents were drinking contaminated water potentially for decades.

179.   As a consequence of the PFOA and PFOS contamination within the private wells and the groundwater throughout the Town, many residents are at risk of developing adverse health effects.

**VII.   Introduction of PFOA and PFOS to Environmental Media Within Wainscott**

180.   PFOA and PFOS are contained in a variety of products such as AFFF, Teflon, paints, cleaners, dental floss, and numerous products containing Scotchgard, including clothing, textiles, carpet, leather, and paper.

181.   PFOA and PFOS are introduced to environmental media by the intended and foreseeable uses of these products by society at large.

182.   PFAS, including PFOA and PFOS, has been detected in environmental media (i.e. soil and groundwater) and drinking water throughout Wainscott.

183.   As PFOA and PFOS are biopersistent, it is expected that the contaminated environmental media throughout Wainscott will remain contaminated for decades absent active remediation.

184.   In Wainscott, the likely sources of PFOA and PFOS groundwater contamination

21

are uses of AFFF and wastewater and Plaintiff's and the government's investigation is ongoing.

### a. AFFF

185.    PFOA and PFOS are contained in AFFF.

186.    In the 1960's, 3M developed AFFF for use at airports and firefighting training facilities.

187.    3M designed, developed, manufactured, marketed and sold AFFF from the 1960's through 2002.

188.    Since then, AFFF has been used to extinguish flammable liquid fires, which are difficult to fight and not safely extinguished with water.

189.    AFFF concentrate contains PFOA and PFOS and is mixed with water to make a liquid foam which is aerated and applied to fire suffocating the fire of oxygen and thereby extinguishing it.

190.    AFFF has been stored and used throughout the country at, among other places, airports, and firefighting training facilities.

191.    At various times after approximately 1976, each of the AFFF Manufacturing Defendants designed, developed, manufactured, marketed and/or sold AFFF.

192.    AFFF Manufacturing Defendants designed, manufactured, distributed, marketed, supplied and/or sold AFFF used at the Airport, the Fire Training Facility, the Sand Pit, and throughout the Town.

193.    Local Defendants used AFFF or authorized the use of AFFF on their property and other materials containing PFOA and PFOS for actual firefighting and firefighting drills within the Town for decades.

194.    The Village, through EHFD, and BVFD used AFFF at the Airport for actual firefighting, firefighting drills and associated uses.

22

195.    The Village, through EHFD, and BVFD used AFFF at and around the Fire Training Facility for firefighting drills and associated uses.

196.    Local Defendants used AFFF, or authorized the use of AFFF, at the Sand Pit for firefighting drills and associated uses.

197.    Upon information and belief, the Village, through EHFD, and BVFD used AFFF and throughout the Town, for actual firefighting, firefighting drills and associated uses.

198.    Upon AFFF being sprayed in accordance with its intended use and per AFFF Manufacturer Defendants' instructions, the AFFF material contacts the ground and PFOA and PFOS enters the soil.

199.    The PFOA/PFOS then migrate through the soil to the groundwater below.

200.    Local Defendants' use of AFFF or authorization of the use of AFFF supplied by the AFFF Manufacturing Defendants, has caused contamination of the Town's environmental media, and the Town's residents' drinking water.

201.    Throughout the time AFFF containing PFOA and PFOS was used at the Airport, Fire Training Facility and the Sand Pit, warning labels, manuals, and safety information provided with AFFF by AFFF Manufacturing Defendants did not provide notification of the environmental and health perils of which AFFF Manufacturing Defendants knew, or should have known, existed.

202.    The New York State Department of Environmental Conservation ("NYSDEC") conducted a subsurface investigation of the Airport and the Fire Training Facility and released its findings in a report dated November 2018.

203.    The NYSDEC report reveals NYSDEC's determination that PFOA and PFOS is present in the soil and groundwater at and underneath the Airport and Fire Training Facility.

204.    The NYSDEC investigation report reveals that AFFF used at the Airport and Fire Training Facility constitutes a likely source of the PFOA and PFOS contamination found in the

23

soil and groundwater located at the Airport and Fire Training Facility.

205.    NYSDEC is currently investigating the Sand Pit and the results of that investigation have not yet been made available to the Town.

206.    Upon information and belief, NYSDEC is in the process of investigating whether the PFOA and PFOS contamination found at the Airport and the Fire Training Facility has migrated off-site.

207.    Plaintiff's hired environmental consultant has reviewed all available information and has preliminarily made a determination that the AFFF uses at the Airport, Fire Training Facility and Sand Pit are likely sources, among other sources, of the PFOA and PFOS groundwater and drinking water contamination found in Wainscott.

### b.  *Wastewater and Additional Sources*

208.    The wastewater of Wainscott residences and businesses are routed to individual cesspools for each property.

209.    Cesspools enable leaching of wastewater through the subsurface.

210.    Wastewater containing contaminants routed to cesspools may leach to the soil and ultimately contaminate the groundwater.

211.    PFOA and/or PFOS may be introduced to the subsurface via wastewater routed to cesspools after Teflon, manufactured by DuPont, is washed, clothing containing PFOA and/or PFOS is laundered, cleaning supplies containing PFOA and/or PFOS are disposed of down a drain, and a variety of other products containing PFOA and/or PFOS, including products containing Scotchgard (manufactured by 3M), are used in accordance with their intended use.

212.    Manufacturing Defendants failed to provide warning that the intended or foreseeable uses of their products could cause harm to human health or the environment.

213.    Upon information and belief, the intended and foreseeable use of a variety of

24

products by unsuspecting residents and business owners of Wainscott caused wastewater contaminated with PFOA and/or PFOS to be routed to their individual cesspools ultimately contaminating environmental media throughout the Town.

214.    Plaintiff's hired environmental consultant has reviewed all available information and has preliminarily made a determination that wastewater emanating from private cesspools may be a potential source of PFOA/PFOS contamination of environmental media and private drinking water wells in Wainscott.

215.    Plaintiff's hired environmental consultant (as well as NYSDEC) is continuing its ongoing investigation to determine all sources of the PFOA and PFOS contamination present in environmental media throughout Wainscott.

216.    Such investigations, upon their conclusion, may reveal additional sources of the PFOA and PFOS contamination.

**VIII.    Actions of Plaintiff to Mitigate the Harm to Human Health and the Environment**

217.    Immediately upon learning of the contamination in October 2017, Plaintiff engaged in numerous efforts to protect the health, safety and welfare of its residents as well as the environment.

218.    In October 2017, Plaintiff advised residents located within the area of concern not to drink, cook or shower with their private well water.

219.    From October 2017 through the present, Plaintiff has supplied bottled water for drinking, cooking and bathing to certain Wainscott residents as a result of PFOA/PFOS detection in residents' private wells.

220.    Plaintiff has incurred significant costs associated with providing bottled water to impacted residents.

221.    The Suffolk County Water Authority's local public drinking water distribution

25

system is not contaminated with PFOA and PFOS.

222.    Plaintiff has committed to, and is in the process of, connecting and paying for the connection of Wainscott residences to the Suffolk County Water Authority public drinking water distribution system.

223.    The connection of Wainscott residences to Suffolk County Water Authority's public water supply will enable private residents to no longer rely on their private wells for drinking water.

224.    Plaintiff will be paying for the cost of the connections in full.

225.    Plaintiff's connection cost is expected to be no less than $24 million.

226.    After the connection is complete, Plaintiff expects to incur significant ongoing operation and maintenance costs with respect to the connections to the public water supply.

227.    It is expected that the public water supply administered by the Suffolk County Water Authority will be available to connect to private residences shortly.

228.    Plaintiff expects to continue to supply bottled water to Wainscott residents until the public water supply administered by the Suffolk County Water Authority is connected to Wainscott residences.

229.    Plaintiff has hired numerous environmental professionals to investigate and monitor the PFOA/PFOS in environmental media.  Those costs are ongoing and continue to mount.

230.    Plaintiff will likely incur expenses to remediate the PFOA/PFOS contamination of environmental media found within the Town, including such contamination found at the properties Plaintiff owns, in the near future, the cost of which is not yet known.

IX.    **The Class Action**

231.    On March 21, 2018, a complaint was filed that commenced the Class Action

26

against certain AFFF Manufacturing Defendants and the Town.

232.    The putative class consists of residents of Wainscott who have detected PFOA and PFOS in their private wells.

233.    By the Class Action, the residents seek, among other things, damages in tort against various manufacturers of AFFF or PFOA/PFOS as well as the Town resulting from detections of PFOA/PFOS in residents' private wells.

234.    Some, but not all, Manufacturing Defendants are named defendants in the Class Action. Specifically, United Technologies and the Product Manufacturing Defendants are not named defendants in the Class Action.

235.    None of the Local Defendants are named defendants in the Class Action.

236.    As Defendants' actions caused the harm, if any, to the putative class, Defendants are liable for any judgment entered against the Town in the Class Action pursuant to doctrines of contribution and indemnity.

## CAUSES OF ACTION

### First Cause of Action against Defendants
### (Negligence)

237.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

238.    Defendants owed a duty of care to Plaintiff to not design, develop, manufacture, distribute, market, supply, sell, use and/or allow use of product(s) within the Town that were likely to contaminate environmental media within the Town and the drinking water of the Town's residents.

239.    Defendants' breached that duty by negligently designing, developing, manufacturing, distributing, marketing, supplying, selling, using and/or allowing use of products

27

containing PFOA and PFOS, including but not limited to, AFFF, Scotchgard, Teflon and other products throughout the Town.

240. Alternatively, Defendants owed a duty of care to Plaintiff to warn Plaintiff and end-users that the use of product(s) within the Town were likely to latently contaminate environmental media within the Town and the drinking water of the Town's residents.

241. Defendants' breached that duty by failing to warn Plaintiff and end-users that the use of products containing PFOA and PFOS, including but not limited to, AFFF, Scotchgard, Teflon and other products within the Town were likely to latently contaminate environmental media within the Town and the drinking water of the Town's residents.

242. Defendants' breaches are the actual cause or substantial factor of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

243. Defendants' breaches are the proximate cause of (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

244. Upon information and belief, Defendants knew or should have known that their acts were probable to cause injury to the environment and human health in the manner complained herein. Defendants acted with knowledge, intent, fraud and/or malice driven by their own motives to profit from their products with conscious disregard for public health and the environment.

245. As a result of the foregoing, Defendants are jointly and severally liable to the Plaintiff in an amount to be proven at trial for: (I) actual, direct, indirect, incidental and consequential compensatory damages for Plaintiff's costs associated with: (i) supplying bottled

28

water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by the Town; (II) natural resource damages for damage to the groundwater located within Town borders; (III) injunctive relief requiring and directing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media, and (IV) for such other, further, and different relief as the Court deems just and proper including punitive damages, pre- and post- judgment interest, costs, and attorneys' fees.

### Second Cause of Action against Defendants
### (Strict Liability - Ultra Hazardous Activity)

246.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

247.    Defendants' design, development, manufacturing, distribution, marketing, supply, sale, use, storage, and/or allowance of use of AFFF, Scotchgard, Teflon and other products containing PFOA and PFOS, which are hazardous substances, in an unremediated, unmonitored, unreported and unsecured condition constitutes ultrahazardous activity.

248.    Defendants' design, development, manufacturing, distribution, marketing, supply, sale, use, storage and/or allowance of use of AFFF, Scotchgard, Teflon and other products: (i) created a high risk of harm to others, including the Town, whose properties have been adversely affected by the PFOA/PFOS contamination, (ii) created a likelihood that the harm resulting from these activities would be great, (iii) presented the inability to eliminate the risk by the exercise of reasonable care, (iv) were not a matter of common usage, (v) were inappropriate to the place carried on in Wainscott, which overlies a sole source aquifer, and/or (vi) the value to the

29

community did not outweigh its dangerous attributes.

249.    As a result of these ultrahazardous activities, Defendants have and had a duty, including an absolute duty, to Plaintiff.

250.    As a result of these ultrahazardous activities, PFOA and PFOS were released into the environment within the Town causing harm to Plaintiff and its residents.

251.    Each Defendant's conduct actually caused and/or was a substantial factor in causing: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

252.    Each Defendant's conduct is the proximate cause of the: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

253.    The harm suffered by Plaintiff is precisely the kind of harm that made the Defendants' activities ultrahazardous.

254.    Upon information and belief, Defendants knew or should have known that their design, development, manufacturing, distribution, marketing, supply, sale, use, allowance of use and/or failure to warn were probable to cause injury to the environment and human health in the manner complained herein.  Defendants acted with knowledge, intent, fraud and/or malice driven by their own motives to profit from their products with conscious disregard for public health and the environment.

255.    As a result of the foregoing, Defendants are jointly and severally liable to the Plaintiff in an amount to be proven at trial for: (I) actual, direct, indirect, incidental and consequential compensatory damages for Plaintiff's costs associated with: (i) supplying bottled

30

water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by the Town; (II) natural resource damages for damage to the groundwater located within Town borders; (III) injunctive relief requiring and directing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media, and (IV) for such other, further, and different relief as the Court deems just and proper including punitive damages, pre- and post- judgment interest, costs, and attorneys' fees.

### Third Cause of Action against Manufacturing Defendants
### (Strict Liability - Defective Design)

256.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

257.    Manufacturing Defendants designed, manufactured, distributed, marketed, supplied and/or sold PFOA, PFOS and/or products containing PFOA and/or PFOS, including, but not limited to AFFF, Scotchgard, and Teflon.

258.    Manufacturing Defendants placed PFOA, PFOS and/or products containing PFOA and/or PFOS in the stream of commerce.

259.    During all relevant times, PFOA, PFOS and/or products containing PFOA and/or PFOS presented latent dangers such that a reasonable consumer would not be aware of such dangers.

260.    PFOA, PFOS and/or products containing PFOA and/or PFOS were not reasonably safe in their design.

261.    Feasible and safer alternatives existed to produce PFOA, PFOS and/or products

31

containing PFOA and/or PFOS.

262.    Manufacturing Defendants' failed to adopt these alternative designs.

263.    PFOA, PFOS and/or products containing PFOA and/or PFOS were used in accordance with their foreseeable or intended uses throughout the Town and are the actual cause or substantial factor of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

264.    PFOA, PFOS and/or products containing PFOA and/or PFOS were used in accordance with their foreseeable or intended uses throughout the Town and are the proximate cause of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

265.    Upon information and belief, Manufacturing Defendants knew or should have known that PFOA, PFOS and/or products containing PFOA and/or PFOS were defective and would cause injury to the environment and human health in the manner complained herein. Manufacturing Defendants acted with knowledge, intent, fraud and/or malice driven by their own motives to profit from their products with conscious disregard for public health and the environment.

266.    As a result of the foregoing, Manufacturing Defendants are jointly and severally liable to the Plaintiff in an amount to be proven at trial for: (I) actual, direct, indirect, incidental and consequential compensatory damages for Plaintiff's costs associated with: (i) supplying bottled water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and

32

groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by the Town; (II) natural resource damages for damage to the groundwater located within Town borders; (III) injunctive relief requiring and directing Manufacturing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media, and (IV) for such other, further, and different relief as the Court deems just and proper including punitive damages, pre- and post- judgment interest, costs, and attorneys' fees.

### Fourth Cause of Action against Manufacturing Defendants
#### (Strict Products Liability  - Failure to Warn)

267.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

268.     Manufacturing Defendants were designers, manufacturers, distributers, marketers, suppliers, and/or sellers of PFOA, PFOS and/or products containing PFOA and/or PFOS, including, but not limited to AFFF, Scotchgard, Teflon and other products.

269.     Manufacturing Defendants had a duty to warn against latent dangers resulting from the intended or foreseeable uses of PFOA, PFOS and/or products containing PFOA and/or PFOS that Defendant knew or should have known existed.

270.     The intended or foreseeable uses of PFOA, PFOS and/or products containing PFOA and/or PFOS presented latent dangers.

271.     Manufacturing Defendants knew or should have known of these latent dangers.

272.     Manufacturing Defendants failed to warn users of the latent dangers associated with PFOA, PFOS and their products containing PFOA and/or PFOS, including those who used such products in Wainscott.

273.     Manufacturing Defendants' failure to warn is the actual cause or substantial factor

33

FILED: SUFFOLK COUNTY CLERK 12/28/2018 04:22 PM
2:19-cv-01639-RMG     Date Filed 02/01/19     Entry Number 1-1     Page 39 of 49

of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

274.    Manufacturing Defendants' failure to warn is the proximate cause of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

275.    Upon information and belief, Manufacturing Defendants knew or should have known that their failure to warn would cause injury to the environment and human health in the manner complained herein.  Manufacturing Defendants acted with knowledge, intent, fraud and/or malice driven by their own motives to profit from their products with conscious disregard for public health and the environment.

276.    As a result of the foregoing, Manufacturing Defendants are jointly and severally liable to the Plaintiff in an amount to be proven at trial for: (I) actual, direct, indirect, incidental and consequential compensatory damages for Plaintiff's costs associated with: (i) supplying bottled water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by the Town; (II) natural resource damages for damage to the groundwater located within Town borders; (III) injunctive relief requiring and directing Manufacturing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media, and (IV) for such other, further, and different relief as the Court deems just and proper including punitive damages, pre- and post- judgment interest, costs, and attorneys' fees.

34

## Fifth Cause of Action against Defendants
### (Public Nuisance)

277.   Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

278.   Plaintiff is a municipality tasked with protecting natural resources, including groundwater, located within its boundaries, under its Town Code and applicable law.

279.   The drinking water supply for residents of the Town is exclusively supplied by the groundwater located within the Town.

280.   The negligent, reckless, and/or intentional activity of the Defendants, as alleged herein, has created, contributed to, caused and/or maintained contamination of the environmental media and the sole source aquifer within the Town.

281.   The contamination of the environmental media created, contributed and/or maintained by Defendants constitutes a substantial interference with a right common to the public that offends public morals, interferes with or causes damage to the public's right to use the sole source aquifer for safe drinking water, and/or endangers or injures the property, health, safety or comfort of a considerable number of residents of the Town, and particularly the residents of Wainscott.

282.   Upon information and belief, Defendants knew or should have known that their design, development, manufacturing, distribution, marketing, supply, sale, use, allowance of such use and/or failure to warn were probable to cause injury to the environment, property, and human health in the manner complained herein.  Defendants acted with knowledge, intent, fraud and/or malice driven by their own motives to profit from their products with conscious disregard for public health and the environment.

283.   Each Defendant is a substantial factor in bringing about the contamination of the environmental media within the Town and the various private wells of the Town residents, and

35

each Defendant is jointly responsible for the injuries and damage caused to Plaintiff.

284.    As a result of the foregoing, Defendants are jointly and severally liable to the Plaintiff in an amount to be proven at trial for: (I) actual, direct, indirect, incidental and consequential compensatory damages for Plaintiff's costs associated with: (i) supplying bottled water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by the Town; (II) natural resource damages for damage to the groundwater located within Town borders; (III) injunctive relief requiring and directing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media, and (IV) for such other, further, and different relief as the Court deems just and proper including punitive damages, pre- and post- judgment interest, costs, and attorneys' fees.

### Sixth Cause of Action against Defendants
#### (Trespass)

285.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

286.    Plaintiff is a municipality tasked with protecting natural resources, including groundwater, located within its boundaries, under its Town Code and applicable law.

287.    Plaintiff did not give Defendants authority to cause PFOA or PFOS to enter the environmental media throughout the Town.

288.    Upon information and belief, Defendants knew or should have known that their design, development, manufacturing, distribution, marketing, supply, sale, use and/or allowance of such use were probable to cause PFOA and PFOS contamination of environmental media in

36

the Town.

289.    Defendants' willful conduct resulted in PFOA and PFOS intruding into environmental media in the Town without authorization.

290.    Defendants' actions or omissions are the actual cause or substantial factor of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

291.    Defendants' actions or omissions are the proximate cause of: (i) contamination of the environmental media throughout the Town, (ii) contamination of the private drinking water wells of the Town's residents, (iii) endangerment to the environment and human health described herein, and (iv) damages suffered by Plaintiff set forth herein.

292.    Upon information and belief, Defendants knew or should have known that their design, development, manufacturing, distribution, marketing, supply, sale, use, allowance of use and/or failure to warn were probable to cause injury to the environment and human health in the manner complained herein. Defendants acted with knowledge, intent, fraud and/or malice driven by their own motives to profit from their products with conscious disregard for public health and the environment.

293.    As a result of the foregoing, Defendants are jointly and severally liable to the Plaintiff in an amount to be proven at trial for: (I) actual, direct, indirect, incidental and consequential compensatory damages for Plaintiff's costs associated with: (i) supplying bottled water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by the Town; (II) natural resource damages for damage to the groundwater

located within Town borders; (III) injunctive relief requiring and directing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media, and (IV) for such other, further, and different relief as the Court deems just and proper including punitive damages, pre- and post- judgment interest, costs, and attorneys' fees.

**Seventh Cause of Action against Defendants**
**(Restitution/Unjust Enrichment)**

294.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

295.    Manufacturing Defendants made millions, if not billions, in profit from design, development, manufacturing, distribution, marketing, supply, sale, of PFOA, PFOS and/or products containing PFOA and PFOS.

296.    Local Defendants used, or allowed the use of, AFFF containing PFOA and PFOS, throughout the Town.

297.    PFOA and PFOS has contaminated environmental media and drinking water wells throughout the Town.

298.    It would be against equity and good conscience to permit Defendants to pass to Plaintiff the financial burden of supplying Town residents' clean drinking water and investigating and remediating the Town's environmental media as a result of the PFOA/PFOS contamination found throughout the Town.

299.    Defendants must make restitution to Plaintiff for all of Plaintiff's prior, current and future associated expenses, costs and damages, including interest, attorneys' fees and costs.

## Eighth Cause of Action against Defendants
### (East Hampton Town Code §180-10 – Injunctive Relief)

300.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

301.    Plaintiff is a municipality tasked with protecting natural resources, including groundwater, located within its boundaries.

302.    East Hampton Town Code section 180-7 provides as follows:

> It shall be unlawful for any person, directly or indirectly, to cause or allow the discharge of toxic or radioactive substances, industrial waste, sewage or other contaminants into the air, water or earth in quantities, of characteristics or for such duration which cause or are likely to cause detriment to health, safety, welfare, property, surface water or groundwater.

East Hampton Town Code §180-7.

303.    East Hampton Town Code section 180-10 provides an enforcement remedy for violations of section 180-7 as follows:

> Any person, firm, corporation or other entity that commits a violation of this chapter shall be punishable in the following manner: . . . (3) In lieu of or in addition to these punishments, any offender may be punished by being ordered to restore the affected property to its condition prior to the offense, insofar as that is possible. Any such order shall specify a reasonable time for the completion of such restoration, which shall be effected under the supervision of the approving authority.

East Hampton Town Code §180-10.

304.    Defendants' are persons as defined under East Hampton Town Code §§ 180-2 and 180-7.

305.    Defendants designed, developed, manufactured, distributed, marketed, supplied, sold, used and/or allowed the use of PFOA, PFOS, and/or products containing PFOA and/or PFOS, including AFFF, Scotchgard, Teflon and other products containing PFOA and PFOS

39

throughout the Town.

306.    PFOA and PFOS are toxic substances.

307.    PFOA and PFOS are contaminants.

308.    By designing, developing, manufacturing, distributing, marketing, supplying, selling, using and/or allowing the use of PFOA, PFOS and/or products containing PFOA and/or PFOS, Defendants caused or allowed the discharge of toxic substances or other contaminants into the earth in quantities that have caused the detriment of health, safety, welfare, property and/or groundwater.

309.    Defendants have violated Town Code § 180-7.

310.    As a result of the foregoing, injunctive relief must be granted pursuant to Town Code § 180-10 in favor of Plaintiff and against Defendants requiring and directing Defendants to restore, or otherwise pay for the restoration of, all environmental media within the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media and for such other, further, and different relief as the Court deems just and proper including pre- and post-judgment interest, costs, and attorneys' fees.

### Ninth Cause of Action
### Against United Technologies, Product Manufacturers and Local Defendants[2]
### (Contribution)

311.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs and the allegations set forth in the complaint that commenced the Class Action as if fully stated herein.

312.    Plaintiff is a named defendant in the Class Action.

---

[2]    Plaintiff seeks or will seek contribution against the other Manufacturing Defendants via cross claim in the Class Action as those parties are named defendants in the Class Action.

313.    The putative class consists of residents of Wainscott whose private drinking water supply wells have been contaminated with PFOA and/or PFOS.

314.    The putative class seeks money damages against Plaintiff, among other parties.

315.    United Technologies, Product Manufacturers and Local Defendants owed a duty of care to the putative class not to design, develop, manufacture, distribute, market, supply, sell, use and/or allow use of product(s) within the Town that were likely to contaminate environmental media within the Town and the drinking water of the Town's residents.

316.    United Technologies, Product Manufacturers and Local Defendants breached that duty by designing, developing, manufacturing, distributing, marketing, suppling, selling, using and/or allowing use of such product(s) throughout the Town.

317.    United Technologies', Product Manufacturers' and Local Defendants' breaches actually caused, had a part in causing, were a substantial factor in causing, contributed to, and/or proximately caused the PFOA and PFOS contamination found in the private wells of members of the putative class.

318.    To the extent Plaintiff is found liable in the Class Action, United Technologies, Product Manufacturers and Local Defendants shall be deemed liable in an amount to be proven at trial for their apportionment of fault.

**Tenth Cause of Action**
**Against United Technologies, Product Manufacturers and Local Defendants[3]**
**(Indemnification)**

319.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs and the allegations set forth in the complaint that commenced the Class Action as if fully stated herein.

---

[3]      Plaintiff seeks or will seek indemnification against the other Manufacturing Defendants via cross claim in the Class Action as those parties are named defendants in the Class Action.

41

320.    Plaintiff is a named defendant in the Class Action.

321.    The putative class consists of residents of Wainscott whose private drinking water supply wells have been contaminated with PFOA and/or PFOS.

322.    The putative class seeks money damages against Plaintiff, among other parties.

323.    United Technologies, Product Manufacturers and Local Defendants owed a duty of care to the putative class not to design, develop, manufacture, distribute, market, supply, sell, use and/or allow use of product(s) within the Town that were likely to contaminate environmental media within the Town and the drinking water of the Town's residents.

324.    United Technologies, Product Manufacturers and Local Defendants breached that duty by designing, developing, manufacturing, distributing, marketing, suppling, selling, using and/or allowing use of such product(s) throughout the Town.

325.    United Technologies', Product Manufacturers' and Local Defendants' breaches actually caused, had a part in causing, were a substantial factor in causing, contributed to, and/or proximately caused the PFOA and PFOS contamination found in the private wells of members of the putative class.

326.    United Technologies, Product Manufacturers and Local Defendants acts or omissions primarily caused the alleged damage to the putative class.

327.    Plaintiff was a mere passive non-negligent actor with respect to the acts or omissions that resulted in the alleged damage to the putative class.

328.    To the extent Plaintiff is found liable to the putative class, the basis of such liability would solely be on account of other's acts or omissions including United Technologies, Product Manufacturers and Local Defendants.

329.    It would be unjust to require Plaintiff to satisfy any judgment entered against it in the Class Action as opposed to United Technologies, Product Manufacturers and Local

42

Defendants.

330. To the extent Plaintiff is found liable in the Class Action, United Technologies, Product Manufacturers and Local Defendants are liable in the full amount of Plaintiff's liability under principals of common law indemnification.

**WHEREFORE,** plaintiff Town of East Hampton requests judgment in its favor and against Defendants as follows:

i. Actual, direct, indirect, incidental and consequential compensatory damages, in an amount to be proven at trial, for Plaintiff's costs associated with, among other things: (i) supplying bottled water to Wainscott residents, (ii) connecting private residences to the public water supply, and (iii) investigating and remediating environmental media including, but not limited to, soil and groundwater contaminated with PFOA and PFOS located within Town borders, including properties owned by Plaintiff;

ii. Natural resource damages, in an amount to be proven at trial, for damage to the groundwater located within Town borders;

iii. To the extent money damages are inadequate, injunctive relief requiring and directing Defendants to restore, or otherwise pay for the restoration of, all environmental media throughout the Town such that all PFOA and PFOS matter is entirely removed from the impacted environmental media;

iv. All appropriate declaratory relief;

v. Against United Technologies, Product Manufacturers and Local Defendants: to the extent Plaintiff is found liable in the Class Action, for contribution and indemnity of such award;

vi. Awarding punitive damages in a sum to be determined at trial;

43

vii.  Awarding pre- and post-judgment interest, with costs and disbursements

viii.  Awarding attorneys' fees related to the prosecution of the instant action, and

ix.  Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Dated:  December 28, 2018
  Melville, New York          Respectfully submitted,


**RIGANO LLC**
*Attorneys for Town of East Hampton*

By: *s/ James P. Rigano*
   James P. Rigano, Esq.
   Nicholas C. Rigano, Esq.
   Alyse Delle Fave, Esq.
   538 Broad Hollow Road, Suite 217
   Melville, New York 11747
   (631) 756-5900